UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| REGINALD TATE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:22-cv-00117-JPH-MG |
| | ) |
| WARDEN U.S.P. Terre Haute, | ) |
| | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Federal Bureau of Prisons ("BOP") inmate Reginald Tate brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the disciplinary proceeding that commenced with Incident Report No. 3568047, in which he was found guilty of and sanctioned for making a sexual proposal. For the reasons explained in this Entry, Mr. Tate's petition is **denied**.

**A.     Facts and Background**

On November 16, 2021, Registered Nurse Carly Beal wrote Incident Report No. 3568047 charging Mr. Tate with Prohibited Act Code 206, Making Sexual Proposal/Threat. Dkt. 11-1 at 3, ¶ 7; dkt. 11-4 at 11. The Incident Report stated:

> On November 16, 2021, at 0700, while conducting AM pill line and sick call, on B-lower, cell #134, inmate Tate, Reginald, #25934-058, gave a copout to me. In the copout, inmate Tate writes multiple inappropriate remarks including sexual remarks including, "Have anyone ever cut strawberry up, and rub them on your clit and task you...I be sitting here thinking why a man don't have you in paradise, enjoying your presence...lusting and loving you at all the same time. '50 shades of grey.' Everyday something new on your body. You probably have not even had any man to treat you or show you or taste you like its their last meal. I want you...your little caucasian ass probably scared to be with a handsome black man

with dreads." Inmate further writes, "When I come hoimw I want to be in the Carribieans with you sipping alcoholic and enjoying your mind and body." I became aware that the writer of the coupout was inmate Tate, due to inmate Tate having "dreads" and the following statement within the copout, "And my celly need a trash bag for his cast." The only inmate in the SHU with a cast is inmate Mayhew, Lamont 19425-058 which is the cell-mate of inmate Tate.

Dkt. 11-4 at 11 (errors in original).

During an investigation into the allegations, staff found that Mr. Tate handed Nurse Beal a handwritten note (commonly referred to as a "copout") while she was dispensing medications to inmates. Dkt. 11-1 at 3, ¶ 7. On November 16, 2021, Lieutenant Tharp delivered a copy of the incident report to Mr. Tate. Dkt. 11-1 at 3, ¶ 8; dkt. 11-4 at 11. On November 17, 2021, Counselor Carmichael referred the charge to the disciplinary hearing officer ("DHO") due to its severity and advised Mr. Tate of his rights during the disciplinary process. Dkt. 11-1 at 3, ¶ 8; dkt. 11-4 at 10, 12. Mr. Tate denied the allegations and claimed he was "set up." Dkt. 11-1 at 3, ¶ 8; dkt. 11-4 at 23. Additionally, Mr. Tate asked that any video from November 16, 2021, relevant to the charge be saved and reviewed. Dkt. 11-1 at 3-4, ¶ 8; dkt. 11-4 at 12.

Mr. Tate received a Notice of Discipline Hearing before the DHO on January 12, 2022. Dkt. 11-4 at 16. His DHO hearing was held on February 10, 2022. Dkt. 11-1 at 4, ¶ 9; dkt. 11-4 at 21. At the hearing, Mr. Tate waived his right to a staff representative and did not request any witnesses. *Id.* The DHO proceeded with the disciplinary hearing process in accordance with 28 C.F.R. § 541.6. *Id.*

The DHO considered a written statement from Mr. Tate's cellmate, statements made by Mr. Tate to the investigating officer and the Unit Disciplinary Committee, and reviewed video evidence as requested. Dkt. 11-1 at 4, ¶ 9; dkt. 11-4 at 23. The DHO also noted that Mr. Tate had dreadlocks and his cellmate was the only inmate in the unit with a cast, facts that were relevant because the copout referenced his "dreads" and that his "celly need a trash bag for his cast." Dkt. 11-4 at 23. The DHO also reviewed BOP forms Mr. Tate submitted to staff, finding that the handwriting appeared to match the copout at issue. *Id.* The DHO found that the video was not helpful to the inmate or supportive of the charge as it was inconclusive. *Id.* at 23. Based upon the greater weight of the evidence, the DHO concluded that Mr. Tate committed the prohibited act of Code 206, Making a Sexual Proposal, and imposed the following sanctions: 27 days disallowance of good conduct time, 90-day loss of commissary and phone privileges, and a $30 fine. Dkt. 11-1 at 4, ¶¶ 10-11; dkt. 11-4 at 23-24. The DHO report was completed on April 6, 2022, and a copy was delivered to Mr. Tate on April 14, 2022. Dkt. 11-1 at 4, ¶ 12; dkt. 11-4 at 24.

**B.    Legal Standards**

"Federal inmates must be afforded due process before any of their good time credits-in which they have a liberty interest-can be revoked." *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). "In the context of a prison disciplinary hearing, due process requires that the prisoner receive (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional

3

safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id.*; *see also Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974). In addition, "some evidence" must support the guilty finding. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Jones*, 637 F.3d at 845.

### C. Analysis

Mr. Tate alleges that his due process rights were violated during the disciplinary proceedings. Dkt. 1. More specifically, he argues that: 1) the DHO failed to provide a written notice explaining why he found Mr. Tate guilty; 2) the DHO failed to talk to Mr. Tate's witnesses; and 3) the hearing did not take place until 85 days after the incident. *Id.* at 6-7.

#### 1. Hearing Report

Mr. Tate's first claim is that he did not receive proper notice from the DHO explaining the basis for the decision. Before losing any good time credits, inmates are entitled to receive "a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Jones*, 637 F.3d at 845.

In this case, the DHO explained how he weighed the evidence and concluded that Mr. Tate was guilty of the charge. Specifically, the DHO reasoned that the handwriting of the copout and that of Mr. Tate's other submissions matched. Dkt. 11-4 at 23. In addition, the DHO considered the statements from Mr. Tate that "[t]his did not come from my cell. I am being framed," that he "did not pass anything out the door on November 16, 2021 at 0700," and "I didn't

4

give it to her, I was set up." *Id.* The DHO also considered the statement provided by Mr. Tate's cellmate, who did in fact have a cast, that "I did not see him post any note to anyone." *Id.*

The DHO found that these statements were unreliable because a) the nurse herself witnessed Mr. Tate giving her the copout, b) Mr. Tate had reason to deny the charge to avoid sanctions, and c) the cellmate was only trying to help Mr. Tate avoid disciplinary proceedings. *Id.* The DHO found the nurse's statements and observations to be more credible and believable than Mr. Tate's statements. *Id.* The DHO provided more than an adequate description of the evidence that he relied on and the reasons for his finding of guilt.

### 2. Failure to Talk to Witnesses

Mr. Tate had a limited right to call witnesses, and when he was notified of the charge, he said that inmates Mayhew and Kelley could testify that Mr. Tate did not come out of his door. Dkt. 11-4 at 16. Mr. Mayhew's statement is discussed above. Inmate Kelley signed a form stating that he had "no information or knowledge concerning this incident." *Id.* at 18.

The right to call witnesses extends only to "material exculpatory evidence." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The right is further limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). "Inmates

5

have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)).

Mr. Tate's claim that the DHO should have talked to his witnesses is meritless. First, both witnesses that Mr. Tate identified provided witness statements for Mr. Tate to present to the DHO. Dkt. 11-4 at 17–18. Mr. Mayhew merely said he *did not see* Mr. Tate pass any note to anyone. Mr. Mayhew does not say where he was or what he was doing during the relevant time, so the fact that he did not see Mr. Tate pass the note is not exculpatory. The second witness, Mr. Kelley, said he knew nothing about the incident, so talking to him was unnecessary. Mr. Tate does not explain how testimony from either witness at the hearing would undermine the finding of guilt. The DHO did consider both inmates' statements. Due process required no more of the DHO with respect to these witnesses.

### 3. Time Frames

Mr. Tate's final claim challenges the length of time between the incident (November 16, 2021), the date the hearing was conducted (February 10, 2022), and when the decision was issued (April 6, 2022). The only time frame required by *Wolff* is the 24-hour written notice of the charge before a hearing. Mr. Tate did receive timely notice of the hearing. Therefore, this claim also fails.

In sum, Mr. Tate was given adequate advance notice, an opportunity to defend the charges with evidence and witnesses before an impartial decision-

maker, and a written statement of the reasons for the findings of guilt and the evidence considered. In addition, some evidence—the incident report and the matching handwriting samples—supports the DHO's finding of guilt.

### D. Conclusion

For the reasons discussed above, Mr. Tate's petition for a writ of habeas corpus relating to Incident Report No. 3568047 is **denied.** Final judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 3/12/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

REGINALD TATE
25934-058
LEWISBURG - USP
LEWISBURG U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 1000
LEWISBURG, PA 17837

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov